2025 IL App (2d) 250051-U
No. 2-25-0051
Order filed June 12, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* R.L.-C., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 23-JA-27 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | Kathryn D. Karayannis, |
| Appellee, v. Aimee C., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held:* We grant appellate counsel's motion to withdraw and affirm the circuit court's judgment terminating respondent's parental rights, concluding there exist no issues of arguable merit to be raised on appeal.

¶ 2     Respondent, Aimee C., appeals from the circuit court's order finding her unfit to parent her daughter, R.L.-C. (born December 6, 2019), and terminating her parental rights.[1] Per *Anders v. California*, 386 U.S. 738 (1967), and *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (holding *Anders* applies to cases involving termination of parental rights), appointed appellate counsel moves to

_____

[1]The parental rights of Sarah L., R.L.-C.'s other parent, were also terminated. She is not a party to this appeal.

withdraw. Counsel has supported her motion with a memorandum of law providing a statement of facts, potential issues, and argument as to why those issues lack arguable merit. See *In re Alexa J.,* 345 Ill. App. 3d 985, 988 (2003) (further holding that "counsel must identify at least one potentially justiciable issue in a motion to withdraw under *Anders*."). In her motion, counsel states that she read the record and found no issues of arguable merit. Counsel, further, served respondent with a copy of the motion and memorandum. We advised respondent that she had 30 days to respond to counsel's motion. That time has passed, and no response was filed. We conclude that this appeal lacks arguable merit based on the reasons set forth in counsel's memorandum. Thus, we grant counsel's motion and affirm the circuit court's judgment.

¶ 3                                        I. BACKGROUND

¶ 4      Respondent had a lengthy history of involvement with the Illinois Department of Children and Family Services (DCFS). Specifically, on February 1, 2023, DCFS received a call reporting that respondent was intoxicated and grabbed R.L.-C. by the arm and swung her around aggressively. Respondent then left the shelter with R.L.-C. and placed her in the care of Kari Young at the Candlewood Suites in Aurora. While at this location, respondent began punching and kicking walls. She was asked to leave the premises and refused. Respondent was thereafter arrested and charged with aggravated battery to a peace officer, aggravated assault to a peace officer, and criminal trespass to land.

¶ 5      At a shelter-care hearing on February 28, 2023, the court found that probable cause existed to proceed with the petition for adjudication, thereby requiring the urgent and immediate removal of R.L.-C. from respondent's care. The court placed R.L.-C. in the temporary custody of DCFS and scheduled an adjudicatory hearing. The court appointed CASA of Kane County as the guardian

*ad litem* (GAL) for R.L.-C. She was initially placed with Kari Young, fictive kin, and respondent and Sarah L. were allowed supervised visitation at the discretion of DCFS.

¶ 6 After hearings on April 25, 2023, and May 23, 2023, the circuit court, relying on the factual basis submitted by the State and stipulated by respondent and Sarah L., found R.L.-C. to be neglected. The court continued on to a dispositional hearing on May 23, 2023. There, the court found that it was in the best interests of the minor to be made a ward of the court. Regarding both parents, the court determined that, for reasons other than financial circumstances alone, respondent and Sarah L. were unfit and unable to care for, protect, educate, train, supervise, or discipline R.L.-C. As to respondent specifically, the court advised that she would need to complete the services identified in her integrated assessment, including random drug testing, substance abuse treatment, parenting education and coaching, a mental health assessment, individual therapy, and Partner Abuse Intervention Program (PAIP) classes. Additionally, she would need to have stable housing and income, disclose her prescription medications, abstain from alcohol and cannabis, and visit R.L.-C. The court set the permanency goal as return home in 12 months.

¶ 7 A series of permanency-review hearings were held between September 2023 and July 2024. During that time, the court found that respondent was not making reasonable efforts or progress. In September 2023, the court noted that respondent was not following through on any of her services and either missed or tested positive for illegal substances at several drug screenings. Moreover, respondent missed two visits with R.L.-C. for failing to confirm the visit. In January 2024, the court found that respondent was not making reasonable efforts or progress toward the goal of reunification, as she was not participating in any of her required services, she missed several drug screenings, and tested positive for amphetamines. By April 2024, the court found that still not much progress was being made. Respondent missed six of nine drug screenings. She also

missed three scheduled visits with R.L.-C due to weather conditions. However, she completed a parenting education program and substance abuse assessment.

¶ 8     At the July 2024 permanency hearing, the parties noted that respondent was given a referral for parent coaching in June of 2024, had not completed PAIP classes, missed individual therapy appointments, and missed drug screenings. Counsel noted that respondent was wheelchair-bound, as she had broken her leg a month prior and this impacted her ability to complete some services. Nonetheless, the court found that it was "very clear" that neither respondent nor Sarah L. "has been doing what they needed to do." Specifically, the court highlighted that respondent missed two more drug screenings, was not likely enrolled in individual therapy, failed to start her 26-week PAIP classes, and failed to complete her substance abuse services allegedly because of her leg injury, yet was still able to attend court dates and visitation with R.L.-C. Moreover, respondent was unable to provide stable housing, income, or transportation. Accordingly, the court found that "there is not a potential to find that this child could in the near future be returned to [respondent]." Overall, the court concluded that few efforts were made by respondent and there was no substantial progress toward reunification with R.L.-C. The court therefore changed the permanency goal to substitute care pending a petition to terminate parental rights.

¶ 9     On October 25, 2024, the State filed a petition to terminate respondent's parental rights. The State cited the following unfitness grounds: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failure to protect the minor from conditions within her environment that were injurious to her welfare (*id*. § 50/1(D)(g)); (3) failure to make reasonable efforts to correct the conditions which were the basis for the removal of R.L.-C. from respondent during the nine-month period between May 24, 2023, and February 24, 2024, after R.L.-C. was adjudicated neglected or abused (*id*. §

50/1(D)(m)(i)); and (4) failure to make reasonable progress toward the return of R.L.-C. to respondent during the nine-month period between May 24, 2023, and February 24, 2024, after R.L.-C. was adjudicated a neglected/abused minor (*id.* § 50/1(D)(m)(ii)). The State also alleged that it was in the best interests and welfare of the minor that respondent's parental rights be terminated. A hearing on the State's petition to terminate respondent's parental rights was held over several dates, beginning on December 12, 2024.

¶ 10 During the unfitness phase of the termination proceeding, the State called four witnesses: (1) respondent; (2) Sarah L.; (3) Kristen Rangel, a supervisor Lutheran Social Services of Illinois (LSSI); and (4) Gabrielle Moreno, a caseworker at LSSI. The State also submitted several exhibits, including certified records and reports from various agencies and the integrated assessment. In addition, the State asked the court to take judicial notice of various documents, including the minor's birth certificate; respondent and Sarah L.'s marriage license; the visitation plan; the family severance plan; the adjudicatory order; multiple family service plans; the dispositional order; a certificate of completion for a parenting workshop filed July 2, 2024; a letter filed July 2, 2024; a March 2024 parenting-class certificate from Mutual Ground; and several permanency review orders.

¶ 11 On December 13, 2024, the circuit court found respondent unfit based on each allegation in the petition. Specifically, the court questioned respondent's credibility—it recognized respondent's criminal history and her demeanor while testifying, which vacillated between disinterested or asleep on the witness stand to being upset. The court also incorporated the State's closing argument into its findings, which highlighted that respondent has a long history with DCFS; she failed to complete her substance abuse aftercare, including intensive outpatient treatment and alcoholics anonymous meetings; she failed to appear at several drug screenings; she

did not maintain proper identification; she could not recall the content of her parenting classes finished in March 2024; and she failed to complete PAIP classes. Regarding respondent's leg injury, the court found that respondent's excuse for failing to complete some services due to the injury was not credible because she was able to attend court hearings and visits with R.L.-C. regularly, despite the same injury. In sum, the court concluded that respondent did not make progress towards, take reasonable efforts to, or show a reasonable degree of interest in completing services and reuniting with R.L.-C. between May 24, 2023, and February 24, 2024, and that she failed to protect R.L.-C. from the conditions of her environment—namely, anger management issues, substance misuse, and domestic violence.

¶ 12    On January 13, 2025, the court proceeded with the best-interests hearing. First, the court incorporated the prior testimony and exhibits for consideration. Then, Moreno testified for the State and recommended that it was in R.L.-C.'s best interests to terminate respondent's parental rights. Notably, Moreno stated that R.L.-C. was in a loving pre-adoptive home with foster mother, Anna F., who provided her structure and stability, despite facing challenging behaviors initially in the placement. However, since the initial placement, R.L.-C. and Anna F. had begun therapeutic services.

¶ 13    Following arguments by the parties, the circuit court found that it was in the best interests of R.L.-C. that respondent's parental rights be terminated. The court noted that it reviewed the CASA report prior to the hearing and had concerns about Anna F. being an appropriate placement. However, the court found Moreno's testimony "very credible and very helpful" at assuaging the court's concerns that Anna F. was an appropriate placement, as both R.L.-C. and Anna F. started receiving therapeutic services that were not available at the time of the CASA report. The court remarked that Anna F.'s pursuit of services, in particular, was commendable because it "shows

quite a commitment to wanting to be a safe and appropriate foster placement." The court also noted that R.L.-C. began referring to Anna F. as "mommy" or "mama," and, at some points, expressed a preference for staying with Anna F. permanently. The court also noted the positive shift Anna F. was making in shaping R.L.-C.'s sense of responsibility, boundaries, and identity away from influences that valued stealing or violence. Overall, the court found that R.L.-C. was safe and stable and had a sense of identity, participated in tutoring, had new friends, and participated in extracurricular activities while in Anna F.'s care. Nonetheless, the court concluded that, even if Anna F. was not a permanent placement for R.L.-C., it would still be in the minor's best interests to terminate respondent's parental rights. The court therefore granted the State's petition to terminate respondent's parental rights and changed the permanency goal to adoption. This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15     The Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2022)) mandates a two-stage process for the involuntary termination of parental rights. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. In the first stage, the State has the burden of proving by clear and convincing evidence that the parent is unfit under any ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). See 705 ILCS 405/2-29(2), (4) (West 2022); *In re C.W.*, 199 Ill. 2d 198, 210 (2002). If the circuit court finds the parent unfit, the State must then show by a preponderance of the evidence that termination of parental rights is in the minor's best interests. See 705 ILCS 405/2-29(2) (West 2022); *In re D.T.*, 212 Ill. 2d 347, 352, 366-67 (2004). On appeal, we will not disturb a circuit court's finding as to parental unfitness or a minor's best interests unless it is against the manifest weight of the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶¶ 30, 43. A decision is against the manifest weight of the evidence only if an opposite conclusion is

- 7 -

clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 16 Appellate counsel's motion states that she thoroughly reviewed the record and concluded that there are no meritorious issues to be raised on appeal. In accordance with *Alexa J.,* 345 Ill. App. 3d at 987, counsel identified three potential issues she considered raising: (1) the court should have considered respondent's temporary disability and allotted her additional times to complete services; (2) respondent's temporary disability prevented her from completing her required services, which led to the finding of unfitness; and (3) it was not in R.L.-C.'s best interests to terminate respondent's parental rights. However, counsel concludes that none have arguable merit. We agree.

¶ 17                                    A. Fitness Finding

¶ 18 The State has the burden of proving parental unfitness by clear and convincing evidence. *In re Jordan V.,* 347 Ill.App.3d 1057, 1067, 808 N.E.2d 596, 604 (2004). The court's decision is given great deference due to "its superior opportunity to observe the witnesses and evaluate their credibility." *Id.* Furthermore, it is well settled that, "when parental rights are terminated based upon clear and convincing evidence of a single ground of unfitness, the reviewing court need not consider additional grounds for unfitness cited by the trial court." *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004). Hence, if we affirm the circuit court's decision on one ground, we need not consider the court's decision on the other grounds.

¶ 19 Here, the circuit court found respondent unfit, *inter alia*, under section (1)(D)(m)(ii) of the Act, which defines an "unfit person" as, one who fails "to make reasonable progress toward the return of the child *** during any nine-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under

Section 2-4 of that Act." 750 ILCS 50/1(D)(m)(ii) (West 2022). In particular, the State had the burden to show that respondent did not make reasonable progress toward reunification with R.L.-C. between May 24, 2023, and February 24, 2024.

¶ 20    The question of reasonable progress is an objective one, which requires the circuit court to consider whether a parent's actions during a given nine-month period would support a decision to return the child home soon. *In re Phoenix F.*, 2016 IL App (2d) 150431, ¶ 7. The court will consider the parent's compliance with the service plans and the court's directives. *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). For there to be reasonable progress, there must be, at a minimum, some measurable or demonstrable movement toward the goal of reunification. *In re J.O.*, 2021 IL App (3d) 210248, ¶ 57.

¶ 21    We agree with appellate counsel that no meritorious issue can be raised regarding whether respondent's temporary disability warranted additional time to complete services or prevented her from completing her required services. During the relevant nine-month period, between May 24, 2023, and February 24, 2024, respondent failed to complete substance abuse aftercare, including intensive outpatient treatment and alcoholics anonymous meetings; failed to initiate PAIP classes; missed individual therapy appointments (though the court doubted she was enrolled at all); missed several drug screenings and tested positive for amphetamines; did not maintain proper identification; could not recall the content of her parenting classes she completed after March 2024; and failed to provide proof of stable housing, income, or transportation. The court also remarked on respondent's demeanor during the termination proceedings—respondent did not display remorse; rather, she "looked like she was at times half asleep, most of the time upset to be on the witness stand," disinterested, and angry. Overall, the court noted it was "very clear" that neither respondent nor Sarah L. "has been doing what they needed to do" to be reunited with R.L.-C.

¶ 22    *After* the relevant nine-month period, in May 2024, respondent broke her leg and became wheelchair-bound. During the termination proceedings, in December 2024 and January 2025, the court considered respondent's ailment and found her claim of hinderance caused by the injury to be not credible, as respondent only failed to complete her required services, but she continued to attend visitation and court dates regularly without issue. Moreover, respondent never mentioned to the court any efforts made to arrange for transportation after her injury.

¶ 23    The record reflects that, for months, respondent ignored her required services and made minimal effort to complete her required testing and documentation, all *before* her injury occurred. That respondent's ailment occurred after the relevant nine-month window does not excuse her failure to make reasonable progress between May 2023 and February 2024. See *In re F.P.*, 2014 IL App (4th) 140360, ¶ 89 (noting that a parent's personal circumstances "prevent[ing] her from making reasonable progress is irrelevant to the 'objective standard' " by which reasonable progress is measured). Moreover, she is not entitled to additional time to complete the services listed in her service plan, especially where the record is devoid of any evidence that reasonable progress was being made during the relevant nine-month period. The circuit court was entitled to weigh the evidence of respondent's injuries and her inability to complete her required services accordingly, as it was in the best position to observe the conduct and demeanor of respondent. We will not substitute our judgment for that of the circuit court. See *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). In this case, nearly two years had passed since the minor was removed from respondent's custody in February 2023. Nevertheless, respondent was further, rather than closer, to the minor being able to return home. The evidence supported the court's find that "there is not a potential to find that this child could in the near future be returned to [respondent]." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 55. Overall, respondent's injury did not contribute to her failure to make reasonable

progress toward reunification with R.L.-C., and she was not entitled to additional time to complete services, where she demonstrated no reasonable progress toward completing them even before her injury occurred. Accordingly, the court's unfitness finding was not against the manifest weight of the evidence, and, we agree with counsel that no meritorious issues could be raised attacking that finding.

¶ 24                                   B. Best-Interests Finding

¶ 25    During the best-interests phase of parental-rights termination proceedings, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.,* 212 Ill. 2d 347, 364 (2004). The State bears the burden of proving by a preponderance of the evidence that termination of the parent's rights is in the minor's best interests. *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 74. Section 1-3(4.05) of the Act sets forth various factors for the circuit court to consider in assessing a minor's best interests. These considerations include: (1) the minor's physical safety and welfare; (2) the development of the minor's identity; (3) the minor's familial, cultural, and religious background; (4) the minor's sense of attachment, including love, security, familiarity, and continuity of relationships with parental figures; (5) the minor's wishes and goals; (6) community ties; (7) the minor's need for permanence; (8) the uniqueness of every family and every child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the minor. 705 ILCS 405/1-3(4.05) (West 2022).

¶ 26    Here, the evidence supported the court's finding that R.L.-C. was in a stable, safe, and appropriate placement, despite its earlier concerns that Anna F. was struggling with R.L.-C. The court considered Anna F.'s and R.L.-C.'s participation in therapeutic services and found that it was positively assisting their relationship. In particular, the court noted that Anna F.'s pursuit of services was commendable because it "shows quite a commitment to wanting to be a safe and

appropriate foster placement." The court also remarked on the positive shift Anna F. was making in shaping R.L.-C.'s sense of responsibility, boundaries, and identity away from influences that valued stealing or violence. In fact, R.L.-C. started calling Anna F. "mommy" and expressed her desire to stay with Anna F. permanently. Overall, the court found that R.L.-C. was safe and stable and had a sense of identity, tutoring, new friends, and extracurricular activities in Anna F.'s care. These findings were reasonable and supported its determination.

¶ 27    Appellate counsel contends that she can find no justiciable basis to challenge the court's best-interests finding. We agree and conclude that there is no arguable merit to a claim that it was against the manifest weight of the evidence for the circuit court to conclude that the termination of respondent's parental rights was in the minor's best interests. Simply, we have no basis for finding that a conclusion opposite that of the circuit court is clearly evident or that the trial court's decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.,* 2017 IL App (2d) 160657, ¶ 16.

¶ 28                                    III. CONCLUSION

¶ 29    After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issues of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kane County.

¶ 30    Affirmed.